[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for dissolution of marriage was tried over one and one-half days. Both parties were represented and were the only witnesses. They presented evidence on financial issues including alimony, division of assets and liabilities, and counsel fees. Numerous exhibits were entered into evidence. The court has considered all of the statutory criteria for the orders to be issued. The statutory criteria will not be restated here. The court makes the following findings of fact and issues the following orders.
The parties were married on June 17, 1972. There are no minor children of the marriage; the parties have two grown children. The court has jurisdiction over the marriage, both parties having lived in Connecticut for more than one year prior to the bringing of this action. The parties have not been recipients of public assistance during the period of the marriage.
The plaintiff husband is 51 years of age and he is in good health. He has a bachelors degree from Massachusetts Institute of Technology. He is employed by Northeast Utilities in information management. He has gross weekly earnings of $1,477 and a weekly net of $1,034.
The defendant wife is 49 years of age and she is in good health. She has a bachelors degree from the University of Maryland and a medical degree from the University of Connecticut. She is employed as a vascular surgeon by Vascular Services of Western New England in Springfield, Massachusetts. She has gross weekly earnings of $3,076.8 and a weekly net of $1,868.96.
The parties own a home at 43 Highridge Road, West Simsbury, Connecticut where the plaintiff still lives with their son Joel when he is home from college. The property has a value of $510,000. There is no mortgage. CT Page 16106
The parties have lived a frugal life. For many years they lived very simply without much room for extras beyond the necessities of life. They made do on the plaintiff's salary at various engineering jobs supplemented by the defendant's earnings at a variety of pursuits engaged in around the births and upbringing of the children. During the course of the marriage the plaintiff earned $884,000 and the defendant earned $275,000. In 1989 the defendant decided that she wanted to go to medical school. The plaintiff supported this decision. The schooling was financed through scholarships and student loans. In addition, the defendant received gifts from her parents in 1992, 1993, and 1994 of $19,700 each year. After four years of medical school the defendant began her residency in Springfield, Massachusetts. She received a stipend of slightly more than $40,000 per year during this five year residency which began to make life a bit easier for the parties financially. But the real change in their financial lives came in 1995 when the defendant began to receive an inheritance from her parents. At this time the parties had a house with roughly $130,000 in equity and savings of about $50,000. They had two boys who were nearing the age when they would be starting college. The inheritance amounted to $710,191 paid over a period from February 1995 to September 1996. Actually, the defendant received $810,191 but, because of a miscalculation of estate taxes, is obligated to return $100,000. $75,000 is still owed on this obligation. The inheritance changed the financial outlook of the parties dramatically. They used the inheritance to: 1) set up UGMA accounts for the children with a total of $240,000 which have paid for the college educations of the boys; 2) $40,000 was used to pay off the defendant's student loans; 3) they paid off the mortgage on their old home and then sold it and bought a new one into which they put $375,000 in repairs and renovations. The inheritance is now gone.
The plaintiff has retirement plans with a total value of $193,470. The defendant has retirement plans with a value of $15,448.
Much of the trial concerned the issue of fault. It is the plaintiff's position that his wife was at fault for breaking up the marriage by having an affair with a co-worker beginning in May 1999. The defendant's position is that the marriage was in trouble before the affair and that she discussed her feelings with the plaintiff in April 1999 before the affair started. It is regrettable that the defendant was unfaithful after so long a marriage. However, the evidence is clear that the marriage was nearing its end before the affair started. Because of the defendant's grueling schedule in training to become a vascular surgeon, the parties had spent many years with limited time together. Their communications skills withered in these years when they spent so much time apart. Both parties became passionate about completely different things. The plaintiff is passionate about spending as much time as possible engaged in sporting CT Page 16107 and recreational activities of many types. The defendant is just beginning her medical practice and is passionate about spending most of her time working. As has been the case for several years, they really had very little time for each other. The parties did not expend the kind of thought and effort necessary to keep their love alive when they were spending so much time apart. As a result, they lost the love which had previously held them together through the hard times when they were raising their family on a modest income. The plaintiff was not emotionally attuned enough to be aware of what had happened to the marriage. When the defendant told him in April 1999 that there were big problems in the marriage the plaintiff apparently did not take the plaintiff's words to heart. The plaintiff was rightfully hurt to hear about his wife's affair but he should not have been shocked. The defendant's affair was merely a symptom of a basic flaw which had developed in their marriage. The marriage has broken down irretrievably without hope of reconciliation. Fault will not be attributed to either party.
The plaintiff seeks to have the defendant pay him periodic alimony in the amount of $400 per week for 14 years. This request is rejected. It is true that the defendant has yearly income of about $160,000 and the plaintiff's yearly income is only about $77,000 per year. But this discrepancy does not tell the whole story. The plaintiff earns his salary working 40 hours per week; rarely does he have to work overtime. The defendant earns her salary working approximately 80 hours per week; sometimes she has to work as much as 100 per week. It would be unfair to order the defendant to pay alimony when, she has to work at least twice the number of hours per week. Even for child support purposes, 52 hours per week is the maximum used in calculating gross income. For alimony purposes 80-100 hours per week should not be used to determine whether alimony should be paid to a 51 year old MIT educated engineer who earns $77,000 per year working only 40 per week. Further, "need" is one of the important criteria in the awarding of alimony. The plaintiff does not need any alimony to support his current lifestyle. His financial affidavit shows that he has a surplus of $193 per week. If he had any need for more income he could always take a second job and begin to work the kinds of hours the defendant works on a regular basis.
The division of equity in the marital home should be on an equal basis. The plaintiff's proposal that he receive the marital home without any payment to the defendant is not based in reality. It is based upon the plaintiff's feeling that the defendant should be punished for having an affair after 28 years of marriage. This home results primarily from the defendant's inheritance. It is inconceivable that she would receive none of it. The defendant's proposal is that she receive 60% of the value of the home. But, in consideration of all of the statutory criteria, an CT Page 16108 equal split is fair and equitable to both parties. However, the balance of $75,000 due to reimburse the estate of the defendant's parents should be paid first.
The court issues the following orders:
1. The marriage of the parties is dissolved.
2. Neither party shall pay or receive alimony.
3. Within 20 days the parties are ordered to list the marital home for sale at the initial listing price of $525,000. The parties shall actively market the property and shall accept any offer within 3% of the listing price. The parties shall reconsider the listing price every 60 days until such time as the property is sold. From the proceeds of the sale shall be paid the real estate commission, usual closing costs, and the balance due for reimbursement of estate taxes due to the estates of the defendant's parents. The net proceeds after payment of these sums shall be split equally between the parties. The parties are ordered to sign any and all documents necessary to effectuate the terms of the sale. The plaintiff will have the right to continue to reside in the martial home until the closing and will pay all of the costs of the property including taxes, insurance, utilities, and maintenance.
4. The Deferred Compensation Plans shown on the financial affidavits of the parties shall be equalized between the parties. This equalization shall be effectuated by assignments and/or Qualified Domestic Relations Orders prepared by defendant's counsel. The court shall retain jurisdiction to carry out the provisions of this paragraph.
5. The parties shall retain their own checking accounts as shown on their financial affidavits.
6. The parties shall each retain their own non-qualified Schwab accounts as shown on their financial affidavits.
7. The parties shall each retain their own motor vehicles as shown on their financial affidavits. The plaintiff shall retain the anticipated insurance proceeds for the 1994 Saab as shown on his financial affidavit.
8. Each party shall retain the personal property in his or her possession as shown on their respective financial affidavits.
9. For so long as the parties are eligible to claim their son Joel as a dependent for the purposes of federal and state income tax, the plaintiff CT Page 16109 shall be entitled to use the exemption, provided that Joel continues to reside with the plaintiff when he is not in school.
10. Each party shall pay his or her own counsel fees.
John W. Pickard, J.